168-23255

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CINCINNATI INSURANCE COMPANY,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. **11-cv-02055** |
| | ) | |
| **BLUE CAB COMPANY, INC.** and **ROSE M. WASHINGTON-SANDERS,** | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Defendant, BLUE CAB COMPANY, INC. ("Blue Cab"), through its attorneys, states the

following Answer to Plaintiff's Amended Complaint For Declaratory Judgment ("the

complaint"):

### NATURE OF THE ACTION

1.     This Amended Complaint requests the Court to issue a judgment pursuant to 28

U.S.C. § 2201, declaring that the policy of insurance issued by Cincinnati to Blue Cab Company,

Inc. ("Blue Cab") does not require Cincinnati to defend or indemnify Blue Cab in connection

with the lawsuit brought by Rose M. Washington-Sanders ("Sanders").   This judgment is

requested to determine an actual controversy between the parties regarding insurance coverage

for Blue Cab in connection with the underlying lawsuit brought by Sanders.

Answer:     Blue Cab admits only that an actual controversy exists as to Cincinnati's

coverage obligations in relation to the underlying Sanders litigation.

### THE PARTIES

2.     Plaintiff Cincinnati Insurance Company is an Ohio corporation with its principal

place of business in Ohio.  Cincinnati is engaged in the business of selling insurance, including

1

in Illinois.

Answer:     Blue Cab admits the allegations in paragraph two on information and belief.

3.     Defendant Blue Cab Company, Inc. is an Illinois corporation with its principal place of business in Forest Park, Illinois.

Answer:     Blue Cab admits the allegations in paragraph three on information and belief.

4.     Defendant Rose M. Washington-Sanders was at all relevant times a citizen of Illinois residing in Oak Park, Cook County, Illinois.  Sanders is named as a defendant to this action solely because she may be a necessary party to this insurance dispute as a result of her underlying lawsuit against Blue Cab.  Cincinnati seeks no relief from Sanders other than to bind her to the outcome of this coverage dispute.

Answer:     Blue Cab admits only the allegations in the first sentence of paragraph four on information and belief.  Blue Cab is without sufficient information or knowledge to either admit or deny the remaining allegations in paragraph four.

5.     Thomas McFadden ("McFadden") was at all relevant times a citizen of Illinois residing in Berwyn, Cook County, Illinois. McFadden is not named as a defendant in this action because he has already stipulated that Cincinnati owed no coverage to him for the Sanders accident, and therefore any issue of coverage for him personally under the Cincinnati policy has already been resolved.  (A copy of the Stipulation is attached as Exhibit A).

Answer:     Blue Cab admits only the allegations in the first sentence of paragraph five on information and belief.  Blue Cab is without sufficient information and knowledge to either admit or deny the remaining allegations in paragraph five.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §
1332 in that it arises between citizens of different states and the amount in controversy, including
the combined cost of defense and indemnity in the underlying case, exceeds the sum or value of
$75,000.00 exclusive of interest and costs.

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph six on information and
belief.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a
substantial part of the events or omissions giving rise to the claim occurred in this District.

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph seven on information and
belief.

## THE ACCIDENT AND LAWSUIT AGAINST BLUE CAB AND MCFADDEN

8.      On September 23, 2007, Sanders was a rear seat passenger in a taxi cab operated
by McFadden.  McFadden lost control of the taxi cab due to a medical incident, and struck a light
pole (the "Accident").

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph eight.

9.      Sanders sued Blue Cab and McFadden in the suit captioned *Sanders v. McFadden
et al.*, No. 07 L 13584, pending in the Circuit Court of Cook County, Illinois (the "Sanders
lawsuit").  A true and accurate copy of the original Sanders Complaint is attached as Exhibit B.
A true and accurate copy of the Sanders First Amended Complaint (filed on May 20, 2011) is
attached as Exhibit C.

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph nine.

10.     The Sanders Complaints allege that the vehicle involved in the Accident was a taxi cab with Illinois license plate number of 21552TX and a vehicle identification number of 2FAFP71W6YX166916. (Exhibits B and C at ¶ 4).

Answer:     Blue Cab admits the allegations in paragraph 10.

11.     The Sanders Complaints allege that Sanders suffered severe and permanent injuries as a result of the Accident. (Exhibit B at ¶ 16; Exhibit C at ¶ 26). Documents in the Sanders lawsuit demonstrate that her medical expenses from the Accident exceed $450,000.

Answer:     Blue Cab admits the allegations in paragraph 11.

12.     The Sanders Complaints allege that both McFadden and Blue Cab owned the taxi cab involved in the Accident; that McFadden was acting as an agent or employee of Blue Cab at the time of the Accident; and that Blue Cab maintained and controlled the taxi cab at the time of the Accident. (Exhibit B at ¶ 4, 6, 7, 8, 14-16; Exhibit C at ¶¶ 4, 6-8).

Answer:     Blue Cab admits that the Sanders Complaints make the allegations stated in paragraph 12. However, Blue Cab has denied and continues to deny those allegations.

13.     Sanders claims that Blue Cab is vicariously liable under *respondeat superior* for the negligence of McFadden, who allegedly was acting as Blue Cab's employee and/or agent at the time of the Accident. (See Exhibits B and C; see also Sanders' Response to Defendant Blue Cab's Motion for Summary Judgment, as filed on September 27, 2010) (copy attached as Exhibit D).

Answer:     Blue Cab admits that Sanders makes the allegations stated in paragraph 13. However, Blue Cab has denied and continues to deny those allegations.

14.     Count II of Sanders' Amended Complaint also alleges that Blue Cab was negligent in (a) "approving" McFadden to drive a taxi in light of Mr. McFaddden's "medical

history" or (b) failing to obtain information about McFadden's "medical history" before "approving" him to drive a taxi. (Exhibit C).

Answer: Blue Cab admits that Sanders makes the allegations stated in paragraph 14; however, Blue Cab has denied and continues to deny those allegations.

15.    Attached as Exhibit E is a true and correct copy of the Illinois Traffic Crash Report by which the local police department reported the Accident. The "vehicle owner" information reflected in the Crash Report indicates that McFadden was the owner of the vehicle involved in the Accident, which was identified as a 2000 "Ford Crown Vic", with Illinois license plate number of 21552TX and a vehicle identification number of 2FAFP71W6YX166916.

Answer: Blue Cab is without sufficient information to admit or deny whether Exhibit E is a true and correct copy of the Illinois Traffic Crash Report; however, it admits that paragraph 15 accurately recounts what is detailed in that report.

### THE OWNER-OPERATOR AGREEMENT

16.    In September 2007, Blue Cab provided a taxi dispatch service, under which taxicab drivers paid a fee to Blue Cab to receive transmissions about potential taxicab customers.

Answer: Blue Cab admits the allegations in paragraph 16.

17.    In March 2006, Blue Cab and McFadden entered into an agreement called "Blue Cab Company Owner-Operator Agreement" (the "Owner-Operator Agreement"). A true and accurate copy of the Owner-Operator Agreement is attached hereto as Exhibit F.

Answer: Blue Cab admits the allegations in paragraph 17.

18.    The Owner-Operator Agreement was still in effect on the date of the Accident.

Answer: Blue Cab admits the allegations in paragraph 18.

19.    Under that agreement, McFadden agreed to pay Blue Cab for the right to receive

transmissions regarding potential taxicab customers.  (Exhibit F).

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph 19.

    20.    Schedule A of the Owner-Operator Agreement, signed by McFadden as "Owner," indicates that McFadden was the owner of a 2000 Ford Crown Victoria, with Illinois license plate number of 21552TX and a vehicle identification number of 2FAFP71W6YX166916. (Exhibit F).

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph 20.

    21.    The Owner-Operator Agreement specifically states that McFadden is not an employee, agent, legal representative, joint venturer or partner of Blue Cab.  (Exhibit F at ¶ 11).

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph 21.

    22.    The Owner-Operator Agreement states that McFadden will maintain liability insurance of at least $250,000 naming Blue Cab as an insured, and will provide to Blue Cab a Certificate of Insurance reflecting that coverage.  (Exhibit F at ¶ 11).

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph 22.

## THE FIRST CHICAGO POLICY

    23.    First Chicago Insurance Company ("First Chicago") issued a Business Auto liability policy, no. LVA 000020780, to Thomas McFadden of Berwyn, Illinois as the named insured (the "First Chicago policy").

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph 23.

    24.    The liability limits of the First Chicago policy are $250,000 per person or per accident.  The First Chicago policy was in effect on the date of the Accident.

    <u>Answer</u>:      Blue Cab admits the allegations in paragraph 24 on information and belief.

25.     Exhibit G is a true and correct copy of a Certificate of Liability Insurance regarding the First Chicago policy.

Answer:     Blue Cab admits the allegations in paragraph 25 on information and belief.

26.     Exhibit H is a true and correct copy of a Schedule of Additional Insureds under the First Chicago policy ("the Schedule").

Answer:     Blue Cab admits the allegations in paragraph 26 on information and belief.

27.     The Schedule reflects Blue Cab as an additional insured with respect to a 2000 Ford Crown Victoria, vehicle number 2FAFP71W6YX166916, [license plate] 21552TX. (Exhibit H).

Answer:     Blue Cab admits the allegation in paragraph 27 on information and belief.

28.     First Chicago has agreed to provide coverage to both McFadden and Blue Cab in the Sanders lawsuit.

Answer:     Blue Cab admits the allegations in paragraph 28 on information and belief.

29.     The Illinois Vehicle Code provides that "persons who operate motor vehicles in transportation of passengers for hire" must provide proof of financial responsibility in the form of either a bond or an insurance policy providing liability coverage of at least $250,000 per auto. *See,* 625 ILCS 5/8-101 through 116 (copy attached as Exhibit I).

Answer:     Blue Cab admits the allegations in paragraph 29 on information and belief.

## THE CINCINNATI POLICY

30.     Cincinnati issued a policy to Blue Cab containing garage coverage under policy no. CAA 582 71 81 (the "Garage Coverage Part") and Commercial General Liability coverage under policy no. CAP 582 71 81 (the "General Liability Coverage Part") (collectively, the

"Policy"). A certified copy of the General Liability and Garage Coverage Parts of the Policy that were in effect as of the date of the Accident is attached as Exhibit J.

Answer:     Blue Cab admits that Cincinnati issued the policy with the two parts alleged in paragraph 30, but is without sufficient information to either admit or deny that the parts attached as Exhibit J are a complete and accurate copy of those parts.

31.     The Cincinnati Policy that was in effect on the date of the Accident also contains a Commercial Property Coverage Part, Electronic Data Processing Coverage Part and Motor Truck Cargo Coverage Part. (See Exhibit J at CIN 003). None of these three coverage parts provide liability coverage for the Sanders Accident.

Answer:     Blue Cab admits only that the Cincinnati Policy contained other coverage parts, but is without sufficient knowledge or information to admit or deny whether those parts provide coverage for the Sanders Accident.

32.     The Cincinnati Policy that was in effect on the date of the Accident did not provide Umbrella or excess coverage.

Answer:     Blue Cab admits the allegation in paragraph 32 on information and belief.

33.     The Policy states that the words "you" and "your" in the policy provisions refer to the Named Insured shown in the Declarations. (Exhibit J at CIN 0010, 0042).

Answer:     Blue Cab admits only that the copy of the policy attached as Exhibit J includes the provisions cited in paragraph 33.

34.     The Declarations show Blue Cab as a named insured but do not show McFadden as a named insured. (Exhibit J at CIN 001, 005, 036).

Answer:     Blue Cab admits only that the copy of the policy attached as Exhibit J includes the provisions cited in paragraph 34.

8

35.     The words "you" or "your" in the Policy do not refer to McFadden because he is not named a Named Insured in the Declarations of the Policy or in any other portion of the Policy. (See Exhibit J).

Answer:     Paragraph 35 states a legal conclusion rather than a factual allegation, and therefore no answer is required.

## ATTEMPTS TO RESOLVE THIS DISPUTE

36.     First Chicago tendered to Sanders its entire policy limits of $250,000 to resolve the claims against McFadden and Blue Cab, but Sanders rejected that offer as insufficient.

Answer:     Blue Cab admits the allegation in paragraph 36 on information and belief.

37.     Attorneys for Sanders, McFadden, Blue Cab and Cincinnati met on January 12, 2011 to discuss the potential resolution of Sanders' claim.

Answer:     Blue Cab admits the allegations in paragraph 37.

38.     Prior to the January 12, 2011 meeting, Sanders made a formal written demand that Cincinnati pay its policy limits of $1 million to Sanders. (A copy of the January 12, 2011 demand letter is attached as Exhibit K.)

Answer:     Blue Cab admits the allegations in paragraph 38.

39.     At the January 12, 2011 meeting, counsel for Sanders stated that he had read Cincinnati's written explanation of why the Cincinnati policy provides no coverage to Blue Cab for the Accident.

Answer:     Blue Cab admits the allegations in paragraph 39 on information and belief.

40.     On January 13, 2011, Cincinnati sent a letter to Sanders' counsel asking for Sanders' explanation of why she believed coverage was available under the Policy so that

Cincinnati could consider any such explanation and thereby possibly avoid coverage litigation. (A true and correct copy of Cincinnati's January 13, 2011 letter is attached as Exhibit L.)

Answer: Blue Cab admits the allegations in paragraph 40 on information and belief.

41. Sanders did not respond to Cincinnati's January 13, 2011 letter or provide any explanation for her assertion that Cincinnati owes coverage for the Accident.

Answer: Blue Cab is without sufficient information or knowledge to admit or deny the allegations in paragraph 41.

## COUNT I
### THERE IS NO COVERAGE FOR BLUE CAB UNDER THE GARAGE COVERAGE PART OF THE CINCINNATI POLICY

43. Cincinnati repeats and realleges paragraphs 1 through 42 above as though fully repeated herein as paragraph 43.

Answer: Blue Cab restates its prior answers to paragraphs 1-42 above as though fully set forth as paragraph 43 herein.

44. The Insuring agreement of the Garage Coverage Part states as follows:

*SECTION II - LIABILITY COVERAGE*

*A.      Coverage*

*We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" **and resulting from "garage operations"**...*

*We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .*

(Exhibit J at CIN 043) (emphasis added).

10

Answer: Blue Cab admits only that the copy of the policy attached as Exhibit J includes the provisions cited in paragraph 44.

45. The Policy defines "Garage operations" as follows:

*"Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.*

(Exhibit J at CIN 057).

Answer: Blue Cab admits only that the copy of the policy attached as Exhibit J includes the provisions cited in paragraph 45.

46. The Sanders Accident occurred when McFadden lost control of the taxi cab due to a medical event that he suffered while driving.

Answer: Blue Cab admits the allegations in paragraph 46.

47. For purposes of liability coverage under the Garage Coverage Part, "Covered autos" is limited to autos that fall within category "22." (Exhibit J at CIN 040).

Answer: Blue Cab is without sufficient information to admit or deny the allegations in paragraph 47.

48. Category "22" means "only those autos you own." (Exhibit J at CIN 042).

Answer: Blue Cab is without sufficient information to admit or deny the allegations in paragraph 48.

49. On the date of the Accident, the vehicle driven by McFadden was not owned by Blue Cab.

Answer: Blue Cab admits the allegations in paragraph 49.

11

50.     On the date of the Accident, the vehicle driven by McFadden and involved in the Accident was owned by McFadden.

Answer:     Blue Cab admits the allegations in paragraph 50.

51.     The vehicle involved in the Accident was not a "covered auto" for liability coverage under the Garage Coverage Part.

Answer:     Paragraph 51 states a legal conclusion rather than a factual allegation and, therefore, no answer is required.

52.     Cincinnati has no obligation under the Garage Coverage Part of the Policy to defend, indemnify or reimburse Blue Cab in connection with the Sanders lawsuit because Sanders injuries did not result from any "garage operations."

Answer:     Blue Cab denies the allegations in paragraph 52.

Wherefore, Blue Cab prays that Cincinnati's prayer for relief be denied.

## COUNT II
### THERE IS NO COVERAGE FOR BLUE CAB UNDER THE GENERAL LIABILITY COVERAGE PART OF THE CINCINNATI POLICY

53.     Cincinnati repeats and realleges paragraphs 1 through 52 above as though fully repeated herein as paragraph 53.

Answer:     Blue Cab restates its prior answers to paragraphs 1-52 above as though fully set forth as paragraph 53 herein.

54.     The General Liability Coverage Part of the Policy provides coverage for:

*those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply ...*

(Exhibit J at CIN 010).

Answer: Blue Cab admits only that the copy of the policy attached as Exhibit J includes the provision cited in paragraph 54.

55. The General Liability Coverage Part contains an exclusion which specifically excludes coverage for:

g. *Aircraft, Auto or Watercraft*

*"Bodily injury" ... arising out of the ownership, maintenance, use or entrustment to others of any ... "auto" ... owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."*

*This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" ... involved the ownership, maintenance, use or entrustment to others of any ... "auto" ... that is owned or operated by or rented or loaned to any insured.*

(Exhibit J at CIN 013) (the "Auto Exclusion").

Answer: Blue Cab admits only that the copy of the policy attached as Exhibit J includes the provision cited in paragraph 55.

56. The Sanders Complaints allege that Blue Cab owned, maintained, and/or controlled the auto on the date of the Accident. (Exhibit B at ¶¶4, 6-8; Exhibit C at ¶¶4, 6-8.)

Answer: Blue Cab denies that paragraph 56 accurately restates the allegations made in the Sanders Complaints, and Blue Cab affirmatively denies that it owned, maintained or controlled the subject taxi cab on the date of the Accident.

57. Sanders claims that Blue Cab operated, maintained or used the auto as a taxi cab through McFadden as its agent and/or employee. (Exhibits B, C and D.)

Answer: Blue Cab denies that paragraph 57 accurately restates the allegations made in the Sanders Complaints, and Blue Cab affirmatively denies that it owned, maintained or used the subject taxi cab, and further denies that McFadden was its agent and/or employee.

58.     Count II of Sanders First Amended Complaint alleges that Blue Cab was negligent in (a) "approving" McFadden to drive a taxi in light of McFadden's alleged "medical history" and/or (b) failing to obtain information about McFadden's alleged "medical history" before "approving" him to drive a taxi. (See Exhibit C).

Answer:     Blue Cab admits that Count II of Sanders First Amended Complaint makes the allegations stated in paragraph 58, but Blue Cab affirmatively denies those allegations.

59.     Cincinnati has no obligation under the General Liability Coverage Part of the Policy to defend, indemnify or reimburse Blue Cab in connection with the Sanders lawsuit because coverage for Sanders' injury is excluded by the Auto Exclusion.

Answer:     Paragraph 59 states a legal conclusion rather than factual allegations, and therefore, no answer is required.

Wherefore, Blue Cab prays that Cincinnati's prayer for relief be denied.


**BLUE CAB COMPANY, INC.**


By:   /s/ Stephen S. Weiss
          One of its attorneys


Stephen S. Weiss
Tribler, Orpett & Meyer, P.C.
225 W. Washington St., Suite 1300
Chicago, Illinois 60606
Telephone:    (312) 201-6400
Facsimile:    (312) 201-6401

14

## CERTIFICATE OF SERVICE

I herby certify that on July 7, 2011, I electronically filed the foregoing ANSWER TO AMENDED COMPLAINT FOR DECLARATORY JUDGMENT with the Clerk of the Northern District of Illinois using the CM/ECF system which will send notification of the filing to the following:

Larry Rogers
Power Rogers & Smith
70 W. Madison Street
Suite 5500
Chicago, IL 60602
312/236-9381
lrogers@prslaw.com

Hope Nightingale
Litchfield & Cavo
303 W. Madison Street
Suite 300
Chicago, IL 60606
312-781-6614
nightingale@litchfieldcavo.com


_____/s/ Stephen S. Weiss_____
Stephen S. Weiss

Stephen S. Weiss
Tribler, Orpett & Meyer, P.C.
225 W. Washington St., Suite 1300
Chicago, Illinois 60606
Telephone:     (312) 201-6400
Facsimile:      (312) 201-6401