IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 11-cv-02055 |
| BLUE CAB COMPANY, INC. and ROSE M. WASHINGTON-SANDERS, | ) ) ) ) |
| Defendants. | ) |

## AFFIDAVIT OF CHRIS MONAHAN

I, Chris Monahan, first duly sworn under oath, hereby depose and state as follows:

1. The matters set forth in this affidavit are known to me of my own personal knowledge. If called upon to testify as a sworn witness, I could and would testify competently to these matters.

2. I am presently employed by Cincinnati Insurance Company ("Cincinnati") as Field Director, Sales & Marketing. I hold the designations of Chartered Property Casualty Underwriter ("CPCU"), Certified Insurance Counselor ("CIC"), and Associate in Management ("AIM").

3. In 2004 and 2005, I was employed with Cincinnati in the same capacity. In that position my job duties included the review of applications for insurance coverage and the underwriting of insurance risks.

4. Attached hereto as **Exhibit A** is a true and certified copy of the General Liability and Garage Coverage Parts of the insurance policy that was issued to Blue Cab



by Cincinnati and was in effect on September 23, 2007 ("the Policy"). Those pages have been marked with numbers CIN 001-076. The Policy contains a Commercial General Liability ("CGL") coverage part under no. CAP 582 71 81 (marked CIN 009-035) and a Garage coverage part under no. CAA 582 71 81 (marked CIN 036-075). The Policy also contained several other coverage parts such as Commercial Property and Electronic Data Processing. Those other coverage parts provide coverage for loss to property, and do not provide liability coverage for bodily injury.

5. Attached hereto as **Exhibit B** are true and correct copies of selected pages from the underwriting file maintained by Cincinnati regarding policy CAP 582 71 81/CAA 582 71 81.

### Application for Coverage from Cincinnati

6. In summer 2004, I was contacted by Maureen Rott, a representative of Wine Sergi & Company ("Wine Sergi"). Wine Sergi was trying to place insurance coverage for its client Blue Cab Company, Inc. ("Blue Cab").

7. Ms. Rott told me that Blue Cab had auto liability coverage elsewhere and was not seeking to purchase auto liability coverage for its taxicab business from Cincinnati. She told me that she was seeking to place premises liability coverage. On that basis, Cincinnati agreed to consider whether and under what terms it would sell insurance to Blue Cab.

8. In January 2005, I reviewed the application materials submitted by Blue Cab Company, Inc. ("Blue Cab") to Cincinnati. *Exhibit B at CIC UW 128-143*.

9. The application submitted to Cincinnati represented that Blue Cab had auto liability coverage from Auto Owners Insurance Company. *Exhibit B at CIC UW 141*.

The application was consistent with Ms. Rott's statement to me that Blue Cab was not looking to buy coverage from Cincinnati for auto liability arising from its taxi dispatch company.

10. The underwriting file contains a memorandum that I drafted and sent to Rob Breving called "New Business Submission", which is stamped received on January 24, 2005. The New Business Submission indicated that both Blue Cab and M&C Motors were to be named as insureds on the policy to be issued by Cincinnati. That memorandum states:

> *Please issue the attached non-discount policy for the above ... The insured is a cab company in suburban Cook County. WE ARE NOT WRITING THE AUTO. We are covering the office/garage property, GL, garage coverage (they do some independent repair work), and Inland Marine. Attached you will find WinCPP worksheets, loss runs (all losses appear to be auto related ... no losses for the lines we are writing), and account correspondence.*

*Exhibit B at CIC UW 144.*

## Policy as Issued by Cincinnati

11. The Policy names several entities and persons as named insureds on the Named Insured Schedule (form IA 905 01 92). These include Blue Cab Company, M&C Motor Inc., and Northwest Package Delivery. *Exhibit A at CIN 001, 005, and 036.*

12. The CGL portion of the Policy (contained in CAP 582 71 81) was originally written to be in effect from January 1, 2005 to January 1, 2008. It was later modified to remain in effect until January 1, 2010.

13. The premium for the CGL portion of the Policy was based on square footage of the facilities, estimated to be 9000 square feet. *Exhibit A at CIN 009, Exhibit B at CIC*

*UW 110.* This CGL premium basis indicates that Cincinnati was primarily insuring liability risks associated with the premises, such as slip-and-fall accidents.

14. The Garage coverage part of the policy (CAA 582 71 81) was written in one-year policy periods. Garage coverage was reviewed each year for renewal. Cincinnati rarely writes Garage policies on multi-year terms because it wants the flexibility to adjust rates as appropriate on an annual basis.

15. Some coverage parts were included in the Policy due to specific insurance risks associated with one or more of the Named Insureds. For example, the Policy included a Garage coverage part because of the operations of M&C Motors, which ran a garage or auto repair business.

16. The premium for the Garage coverage part of the Policy under classification code 7808 ("Auto repair shop") was determined through a calculation based on "payroll" for M&C Motors employees, originally estimated to be $44,000/year. *Exhibit A at CIN 067, Exhibit B at CIC UW 141.*

17. The premium charged for the Garage coverage part of the Policy was not based on any information provided to Cincinnati relating to Blue Cab or Blue Cab's taxi dispatch operations.

18. The words "you" and "your" in the Policy refer to the Named Insured(s) shown in the Declarations, including the Named Insured Schedule. *Exhibit A at CIN 0010, 0042.*

### Not Cincinnati's Intent to Write Auto Liability Risk for Taxicab Business

19. Cincinnati did not want, or intend, to provide any auto liability coverage for Blue Cab's taxicab business in connection with this account. We understood that such

4

coverage had been obtained from another insurer. If Cincinnati had been told that Blue Cab was seeking liability coverage for taxicab accidents, Cincinnati would not have issued a policy to Blue Cab.

20. For the January 1, 2007 – January 1, 2008 policy year, the Policy defines covered "auto" to mean only those vehicles which fall within the description under symbol "22." The description of symbol 22 states:

> 22 = OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

Exhibit A at CIN 040, 042.

21. Use of the symbol 22 was consistent with the information given to Cincinnati, and consistent with Cincinnati's intent that it would not be insuring any auto liability risk associated with Blue Cab's taxicab dispatch business.

22. The underwriting file contains several documents and notations which are consistent with Cincinnati's intent to not insure any auto-related liability associated with Blue Cab's taxicab dispatch business. Some examples are Exhibit B at CIC UW 73 ("DO NOT WRITE AUTOS"), CIC UW 59-61 (we do not want to write any auto coverage according to previous notes"); and CIC UW 177 ("DO NOT WANT TO WRITE AUTOS.")

### Garage Coverage was Purchased for M&C Motors

23. Cincinnati regularly conducts "audits" of certain risks to verify that the premium charged to the policyholder is correct for the risks being insured. Cincinnati keeps records of the information provided by the auditor, and relies on that information, in the regular course of its business. Depending on internal staffing availability,

Cincinnati sometimes uses an independent outside audit service such as Insurance Audit Services Inc. to verify this information.

24. The Underwriting file for the Blue Cab policy contains audit reports for policy CAA 582 71 81 (the Garage coverage) for several policy years. These were prepared by Insurance Audit Services, Inc. at Cincinnati's request.

25. True and correct copies of the audit reports received by Cincinnati from Insurance Audit Services, Inc., including the "Audit Assignment" page, are contained in Exhibit B at pages numbered CIC UW 084-088 (for the policy year starting January 1, 2005), CIC UW 066-070 (for the policy year starting January 1, 2006); and CIC UW 037-041 (for the policy year starting January 1, 2007).

26. The purpose of these audits was to verify the information used to determine the appropriate premium for the insurance risk associated with classification code 7808 (Auto Repair Shop).

27. These audits of the Garage coverage were conducted telephonically. The audit reports indicate that the person contacted for the audit was "Jim" or "James Bennett." *Exhibit B, CIC UW 081, 067, 038, 025 and 005.*

28. The "Description of Operations" in the Garage coverage audit conducted by Insurance Audit Services, Inc. for the policy year starting January 1, 2005 (dated January 30, 2006), states that the policy:

> *covers M&C Motors which is an automobile repair shop that does auto repair for the general public and two other companies that the owners operate. The owners have a cab company and a delivery service that they also own and file a single tax return for all their businesses. The insured does brake, exhaust, engine, electrical repairs and oil changes for the other two businesses and for the general public. The other two*

> *businesses are charged as customers for the work performed. This W/C [sic¹] policy is only for M&C Motors according to the insured and the agent.*

*Exhibit B at CIC UW 80-89.*

29. The "Description of Operations" in the Garage coverage audit conducted by Insurance Audit Services, Inc. for the policy year starting January 1, 2006 (dated February 21, 2007), states:

> *The insured operates as a corporation with two officers both active. This policy covers M&C Motors which does auto repair for the general public and two other companies both owned by the insured. The insured operates a cab company and a delivery service. This policy applies only to M&C Motors as reported by the insured and the agent. The insured does general auto repair work including engine repair, brake, exhaust, electrical etc.*

*Exhibit B at CIC UW 66-71.*

30. The "Description of Operations" in the Garage coverage audit conducted by Insurance Audit Services, Inc. for the policy year starting January 1, 2007 (dated January 23, 2008), states:

> *The insure [sic] is a corporation with two active officers. This policy according to the insured and agent applies only to M&C Motors, the insured also operates a cab company and delivery service. M&C Motors does oil changes, tune ups, brake work and related repairs to the general publics vehicles.*

*Exhibit B at CIC UW 37-41.*

31. The Garage coverage audit report for the policy year starting January 1, 2007 (January 23, 2008) shows the following employees associated with the Garage business: two officers (Jerilyn Ugaste and James Bennett); six mechanics (who worked various amounts of time during the year), and one "shop help." *Exhibit B at CIC UW 39-*

---

[1] As the audit was directed only to the Garage Liability coverage, this reference to "W/C" appears to be a typographical error.

*40.* Similar pages for the audits of prior years' policies are in Exhibit B at CIC UW 068-069 and 086-087.

32. Cincinnati relied on this employee information in the audit report to determine the appropriate premium for the Garage coverage part. *Exhibit A at CIN 067, Exhibit B at CIC UW 141.*

FURTHER AFFIANT SAYETH NOT.

By: _____
Chris Monahan

Subscribed and Sworn
to before me this 22nd
day of May, 2012.

_____
Notary Public

OFFICIAL SEAL
MARY O. BAUER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JUL. 28, 2012