# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 2055 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| BLUE CAB COMPANY, INC. and | ) | |
| ROSE WASHINGTON SANDERS, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED OPINION AND ORDER[1]

This is an insurance coverage dispute over an insurer's duty to indemnify defendants in an underlying personal injury case. Rose Washington Sanders filed a personal injury lawsuit ("the Underlying Action") against Thomas McFadden and Blue Cab Company, Inc. ("Blue Cab") for injuries she sustained in an accident while she was a passenger in a Blue Cab taxi driven by McFadden. Plaintiff Cincinnati Insurance Company ("Cincinnati") insured Blue Cab under a commercial general liability and garage policy ("the Cincinnati Policy"). Cincinnati filed the instant suit against Blue Cab and Sanders seeking a declaratory judgment that the Cincinnati Policy does not require it to defend or indemnify Blue Cab in connection with the Underlying Action. (*See* dkt. 1.)

On July 1, 2013, Sanders, McFadden, and Blue Cab settled the Underlying Action. Cincinnati did not participate in the settlement discussions. As part of the settlement Blue Cab assigned its rights under the Cincinnati Policy to Sanders. Sanders, individually and as Blue Cab's assignee, then filed a counterclaim against Cincinnati in this suit seeking (i) a declaratory

---

[1] This opinion supersedes the earlier opinion of this court entered at docket no. 76.

judgment that she is entitled to indemnity from Cincinnati (counts 1 and 2), and (ii) collection from Cincinnati as a judgment creditor of Blue Cab (count 3). (Dkt. 60.) On September 27, 2013, Sanders moved for summary judgment on counts 1 and 3 of her counterclaim. (Dkt. 63.) The court denied summary judgment on May 9, 2014, finding that "Blue Cab could have no reasonable anticipation of liability because no reasonable factfinder in the Underlying Case could find that Blue Cab's failure to investigate McFadden's medical history was the proximate cause of Sanders' injuries." *Cincinnati Ins. Co.* v. *Blue Cab Co., Inc.*, No. 11 C 2055, 2014 WL 1876194, at *8 (N.D. Ill. May 9, 2014); (dkt. 76 at 15–16.) Given the court's disposition of the motion, the court directed Cincinnati to promptly move for entry of judgment. *Cincinnati Ins. Co.*, 2014 WL 1876194, at *9. Cincinnati did so on May 13, 2014 (dkt. 78), and the court entered judgment in its favor on May 20, 2014 (dkt. 81).

Subsequently, Sanders moved to alter or amend the judgment (dkt. 83.), arguing that a genuine issue of material fact exists as to the reasonableness of the settlement of the Underlying Action. Because the court is persuaded that an issue of material fact exists on this point, Sanders' motion will be granted, and the court's previous opinion and order (dkt. 76) and entry of judgment (dkt. 81) will be vacated. For the following reasons, Sanders' motion for summary judgment is denied. The court will schedule a trial on the reasonableness of the settlement of the Underlying Action.[2]

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury

---

[2] The court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1367 and because the amount in controversy exceeds $75,000 and there is complete diversity between Cincinnati and the defendants. Venue is proper under 28 U.S.C. § 1391(b).

could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323-24.

## BACKGROUND[3]

### I. McFadden and Blue Cab

McFadden began driving a Blue Cab taxi in 2002. In 2006, McFadden purchased his own taxi from Blue Cab and entered into an Owner-Operator Agreement with Blue Cab. Under the Owner-Operator Agreement, McFadden paid weekly fees to Blue Cab in exchange for the right to use Blue Cab's trade name on his taxi and to receive radio transmissions from Blue Cab

---

[3] The facts set forth in this section are derived from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. The facts are taken in the light most favorable to Cincinnati. In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to the resolution of Sanders' motion.

about potential taxi customers. The agreement provided that McFadden was an independent contractor and stated that it did "not render [McFadden] an agent, legal representative, joint venture or partner of Blue Cab." (Dkt. 64, ex. B ("Owner-Operator Agmt.") § 11.) McFadden was not supervised or managed by Blue Cab while transporting customers and Blue Cab did not control McFadden's hours, the routes he took, or the passengers he picked up.

Prior to starting with Blue Cab, McFadden had experienced unexplained loss of consciousness on one or more occasions. McFadden testified that he had fainted only once in 1999 or 2000, but McFadden's doctor testified that McFadden had lost consciousness several times. (*Compare* dkt. 70, ex. 4 ("McFadden Dep.") at 59:18-60:6, *with* dkt. 70, ex. 6 ("Grodinsky Dep.") at 8:14-17.) The doctor never determined a reason for the episode(s) despite doing a "pretty extensive work up." (Grodinsky Dep. at 8:20-9:5.) He attributed the episode(s) to McFadden's "being acutely intoxicated, which by itself can lead to loss of consciousness [and] can also trigger other events[.]" (*Id.*) There is no record of McFadden's losing consciousness after 2001 when his doctor reported that he stopped drinking.[4] (*Id.* at 9:8-23.) McFadden also was diagnosed with diabetes in 2007 and he took medicine for high blood pressure and hypertension. Despite these conditions, McFadden testified that his driving was never restricted and no physician ever expressed concern about his driving, even after the fainting episode(s). In addition, McFadden's doctor testified that McFadden was able to safely operate a taxi as his profession in 2007 and that he had no concerns about McFadden's medical condition. (*Id.* at 85:6-87:6.)

---

[4] The court notes that there is conflicting testimony about when McFadden actually quit drinking. (*Compare, e.g.,* McFadden Dep. at 19:12-19 (testifying that his last drink prior to the accident was in June 2007), *with* Grodinsky Dep. at 9:6-11 (testifying that records indicate McFadden stopped drinking in October 2001).) Whether or not Blue Cab was negligent for hiring a driver with a history of drinking is not at issue because there is no evidence that McFadden was intoxicated at the time of the accident. Thus any history of drinking is not related to the accident. *See Jones* v. *Beker*, 632 N.E.2d 273, 277, 260 Ill. App. 3d 481, 198 Ill. Dec. 214 (1994).

Blue Cab did not take any steps to inquire about McFadden's health and medical history at any time before or after entering into the Owner-Operator Agreement with McFadden.

## II. Underlying Action

On September 23, 2007, McFadden, responding to a dispatch from Blue Cab, picked up Sanders at Midway Airport in Chicago. While transporting Sanders from the airport to her home in Oak Park, Illinois, McFadden lost consciousness and his taxi struck a light pole. Sanders suffered extensive injuries as a result of the accident and incurred medical expenses exceeding $450,000.

In December 2007, Sanders filed suit against McFadden and Blue Cab in the Circuit Court of Cook County, Illinois. *Sanders* v. *McFadden*, No. 07 L 13584. The suit included claims against Blue Cab for negligently approving McFadden as an operator of a Blue Cab taxi under the Owner-Operator Agreement and negligently failing to obtain McFadden's medical history before entering into the Owner-Operator Agreement. In particular, Sanders asserted that Blue Cab should not have allowed McFadden to operate a taxi under its name because McFadden had lost consciousness in the past and had a history of other health issues. After Sanders filed the Underlying Action, Cincinnati instituted this suit seeking a declaratory judgment that it was not required to defend or indemnify Blue Cab for liability related to Sanders' injuries.

In July 2013, Sanders, McFadden, and Blue Cab settled the Underlying Action, and judgments in the amount of $1,250,000 were entered against McFadden and Blue Cab.[5] Blue Cab assigned its rights under the Cincinnati Policy to Sanders in consideration for a covenant not

---

[5] The agreed judgment orders entered by the state court recite that "the Court finds the judgment . . . is in good faith pursuant to 740 ILCS 100/2(c) and (d)." (Dkt. 64, ex. F at 1; *id.*, ex. G at 1.) Neither party discusses the implications of a good faith finding by the state court on this case.

5

to execute on the judgment against it. McFadden's insurer, First Chicago Insurance Company, agreed to tender its policy limit of $250,000 to Sanders. Although Cincinnati was involved in some prior settlement discussions, it did not participate in the settlement discussions that led to settlement and was not party to the settlement agreement.

### III. Cincinnati Policy

Under the Cincinnati Policy, Cincinnati provided Blue Cab with both commercial general liability coverage ("the CGL Policy") and garage liability coverage. The policy had a limit of $1,000,000 per occurrence. Although Sanders asserts counterclaims under both parts of the Cincinnati Policy, she only moves for summary judgment with respect to liability under the CGL Policy.

The CGL Policy covers amounts "that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Dkt. 64, ex. I ("Policy") at CIN000010.) "Insureds" under the CGL Policy include Blue Cab's "employees" acting "within the scope of their employment . . . or while performing duties related to the conduct of [Blue Cab's] business." (*Id.* at CIN000020.) The policy excludes coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by or rented or loaned to any insured" ("the Auto Exclusion"). (*Id.* at CIN000013.) The Auto Exclusion applies "even if the claims against any insured allege negligence or any wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' . . . involved the ownership, maintenance, use or entrustment to others of any . . . auto . . . that is owned or operated by or rented or loaned to any insured." (*Id.*)

6

ANALYSIS

Sanders asserts that, as an assignee of Blue Cab's rights under the CGL Policy, she is entitled to indemnification from Cincinnati with respect to the judgment against Blue Cab in the Underlying Action. To succeed on her motion for summary judgment, Sanders must establish that there is no genuine issue of material fact that (1) the liability underlying the judgment entered against Blue Cab is covered by the CGL Policy; and (2) Blue Cab entered into the settlement in reasonable anticipation of such liability.[6] *See Santa's Best Craft, LLC* v. *St. Paul Fire & Marine Ins. Co.*, 483 Fed. App'x 285, 286 (7th Cir. 2012) ("When an insured settles the underlying lawsuit prior to trial, the insurer need only indemnify the settlement payments made in reasonable anticipation of liability for damages covered under the policy." (citing *U.S. Gypsum Co.* v. *Admiral Ins. Co.*, 643 N.E.2d 1226, 1244, 268 Ill. App. 3d 598, 205 Ill. Dec. 619 (1994))).

**I.   CGL Policy Coverage**

Cincinnati argues that the Auto Exclusion in the CGL Policy precludes its liability in the Underlying Action.[7] "Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy." *Founders Ins. Co.* v. *Munoz*, 930 N.E.2d 999, 1003, 237 Ill. 2d 424, 341 Ill. Dec. 485 (2010). "Insurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the terms of the

---

[6] The court will apply Illinois law as suggested by the parties. *See Auto-Owners Ins. Co.* v. *Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (internal citation and quotation marks omitted)).

[7] Cincinnati does not argue more generally that Sanders' "negligent approval" claim against Blue Cab is not covered by the policy. *Cf. Am. Family Mut. Ins. Co.* v. *Enright*, 781 N.E.2d 394, 400, 334 Ill. App. 3d 1026, 269 Ill. Dec. 597 (2002) ("[T]he type of risk involved here, negligent hiring, is the type of risk that the parties to the insurance contract reasonably contemplated would be covered by a general liability business policy.").

contract, the ambiguity will be resolved in favor of the insured and against the insurer." *Mount Vernon Fire Ins. Co.* v. *Heaven's Little Hands Day Care*, 795 N.E.2d 1034, 1039, 343 Ill. App. 3d 309, 277 Ill. Dec. 366 (2003) (citing *State Sec. Ins. Co.* v. *Burgos*, 583 N.E.2d 547, 554, 145 Ill. 2d 423, 164 Ill. Dec. 631 (1991)).

In simplified terms, the Auto Exclusion provides that Cincinnati's insurance does not extend to bodily injury arising out of the use[8] of a car that is "owned or operated by or rented or loaned to" an insured. (Policy at CIN000013.) Cincinnati argues that this exclusion applies either because McFadden was an employee of Blue Cab and thus an "insured" who owned and was operating the taxi at the time of the accident or because Blue Cab (which is clearly an insured) was "operating" McFadden's taxi at the time of the accident.[9]

First, the terms of the Owner-Operator Agreement are clear that McFadden was an independent contractor rather than an employee of Blue Cab. (*See* Owner-Operator Agmt. § 11.) Although the terms of the agreement are not dispositive of the relationship between the parties, *see Davila* v. *Yellow Cab Co.*, 776 N.E.2d 720, 723, 333 Ill. App. 3d 592, 267 Ill. Dec. 348 (2002), Illinois law supports the conclusion that McFadden was an independent contractor. Illinois courts have held that "the right to control the manner of doing the work is probably the most important single consideration in determining whether the relationship is that of an employee or an independent contractor." *Statewide Ins. Co.* v. *Brendan Constr. Co.*, 578 N.E.2d 1264, 1266, 218 Ill. App. 3d 1055, 161 Ill. Dec. 618 (1991) (quoting *State Farm Mut. Ins. Co.* v. *Staff*, 325 N.E.2d 1, 4, 26 Ill. App. 3d 217 (1975)). McFadden had the right to control his hours,

---

[8] Specifically, the ownership, maintenance, use or entrustment to others of a car that is owned or operated by an insured or rented or leased to an insured (including any negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring by the insured of others using such a car).

[9] It is undisputed that Blue Cab did not own, rent or lease McFadden's taxi.

8

routes, and passengers. He owned his own taxi and retained all his fares, paying only a fixed weekly fee to Blue Cab. As Cincinnati admits in its brief, "McFadden was not an employee of Blue Cab, Blue Cab did not own or lease the taxi, and had no control McFadden's [*sic*] driving or his day-to-day work." (Dkt. 71 at 6.) Because McFadden was not an employee, he was not an "insured" under the terms of the CGL Policy and thus his ownership and operation of the taxi does not result in application of the Auto Exclusion.

Second, Blue Cab was not "operating" McFadden's taxi at the time of the accident as would be necessary for the event to fall within the Auto Exclusion.[10] Although Blue Cab, as a corporation, could not itself operate a car, it could operate the car through its employees or agents. But as noted above, McFadden was not an employee or an agent of Blue Cab. He was not on Blue Cab's payroll and he could choose when and where to drive the taxi. *See Grace* v. *Faire*, No. 1-13-0575, 2013 IL App (1st) 130575-U, 2013 WL 6237661, at ¶¶ 13-15 (Dec. 2, 2013) (candle vendor not an agent of marketplace supervisor where vendor managed the day-to-day operation of her business without interference from supervisor and retained all earnings from sales). A finding that Blue Cab somehow "operated" the taxi owned and physically operated by McFadden would defy the ordinary meaning of the word.[11]

---

[10] Generally, Illinois courts have narrowly interpreted the term "operating" in auto insurance policies. An individual need not be driving a vehicle to be the "operator," but his acts must be "closely related to control and actual driving of the car. . . ." *Heritage Ins. Co. of Am.* v. *Phelan*, 321 N.E.2d 257, 262, 59 Ill. 2d 389 (1974) (driver who stopped to repair car remained its operator even though he was not driving). The "better definition of the term 'operating' is that it involves personal physical management of the automobile by the person in question." *Collins* v. *Econ. Fire & Cas. Co.*, 422 N.E.2d 74, 75, 96 Ill. App. 3d 796, 52 Ill. Dec. 393 (1981) (citation omitted).

[11] Cincinnati contends that Sanders should be foreclosed from arguing in this suit that Blue Cab was not operating the taxi because she represented otherwise in the Underlying Action. Although Sanders' second amended complaint in the Underlying Action does contain a few allegations that Blue Cab somehow owned or operated McFadden's taxi, the gist of count two of that complaint asserts that Blue Cab was negligent in authorizing McFadden to drive his taxi under the Blue Cab trade name because of McFadden's medical history. (*See* dkt. 70, ex. 1 at 9, ¶ 25.) The court refuses to bind Sanders' hands because of imprecise language in her complaint in the Underlying Action. Furthermore, Sanders'

9

Both cases cited by Cincinnati in support of the application of the Auto Exclusion can be distinguished. In *Northbrook Property and Casualty Company* v. *Transportation Joint Agreement*, 741 N.E.2d 253, 194 Ill. 2d 96, 251 Ill. Dec. 659 (2000), the court found that a school bus accident was covered by an auto exclusion in the school districts' insurance policy because the bus was "operated jointly by the school districts." *Id.* at 254. In *Oakley Transport, Inc.* v. *Zurich Insurance Company*, 648 N.E.2d 1099, 271 Ill. App. 3d 716, 208 Ill. Dec. 177 (1995), the court held that an accident fell within the auto exclusion when it was the result of an "employee . . . operating a semi-tractor during the course of his employment." *Id.* at 1101. In both cases, the operator of the vehicle was determined to be an insured under the policy. In contrast, McFadden's taxi was not operated by an insured under the CGL Policy at the time of the accident and thus the Auto Exclusion does not preclude liability.

Finally, Cincinnati argues that Sanders should be foreclosed from using the CGL Policy as a basis for coverage because she failed to cite the CGL Policy in contention interrogatories submitted prior the filing of her counterclaim. Cincinnati's argument is unavailing because it was on notice of a potential liability claim against the CGL Policy. Indeed, in the complaint that initiated this lawsuit, Cincinnati requested a declaration that it was not liable under the CGL Policy. *See U.S. Gypsum Co.* v. *LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 619 (N.D. Ill. 2007) (preventing party from pursuing theory not relied on in response to contention interrogatories "would only be appropriate if defendants were prejudiced by the theory not being expressly

---

purported admission "is not even competent evidence in this case because it states a legal conclusion and is not the admission of a fact that could be dispositive." *Kohler* v. *Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996).

included in the interrogatory responses" (citations omitted)). Any failure by Sanders to mention the CGL Policy in her interrogatory responses was harmless.[12]

For these reasons, Cincinnati's argument that the Auto Exclusion precluded its liability in the Underlying Action fails.

## II.    Reasonableness of Settlement of Underlying Action[13]

A settlement that effectively lets the insured off the hook while placing an insurer who did not consent to the settlement on the hook gives rise to concerns about collusion between the insured and the injured party. In such a case, the settlement binds the insurer only if the insured proves that the settlement was reasonable. *Guillen ex rel. Guillen* v. *Potamac Ins. Co. of Ill.*, 785 N.E.2d 1, 14, 203 Ill. 2d 141, 271 Ill. Dec. 350 (2003). The insured need not establish actual liability, *SwedishAmerican Hosp. Ass'n of Rockford* v. *Ill. State Med. Inter-Ins. Exch.*, 916 N.E.2d 80, 101, 395 Ill. App. 3d 80, 334 Ill. Dec. 47 (2009), but the court must consider whether the settlement was made in reasonable anticipation of liability and "whether, considering the totality of circumstances, the insured's decision conformed to the standard of a prudent *uninsured*." *Guillen*, 785 N.E.2d at 14 (internal quotation marks and citation omitted, emphasis in original). "The burden of proving reasonableness falls on the insured both out of fairness, since the insured was the one who agreed to the settlement, and out of practicality, since the insured will have better access to the facts bearing upon the reasonableness of the

---

[12] In support of its argument, Cincinnati cites to cases that are unhelpful to its cause. *See Ryerson Inc.* v. *Fed. Ins. Co.*, 676 F.3d 610, 614 (7th Cir. 2012) ("When there is no prejudice to the opposing party, invoking the doctrine of mend the hold [which forbids a defendant to alter its defenses] to bar a valid defense is overkill."); *Pierce* v. *Chicago Rail Link, L.L.C.*, No. 03 C 7524, 2005 WL 599980, at *3 (N.D. Ill. Mar. 15, 2005) (allowing argument to go forward despite its omission in interrogatory response).

[13] Because Blue Cab's counsel in the Underlying Action did not move to dismiss or move for summary judgment on the relevant claim, the court does not have any guidance from the state court on the merits of the claim.

settlement." *Fed. Ins. Co.* v. *Binney & Smith, Inc.*, 913 N.E.2d 43, 49, 393 Ill. App. 3d 277, 332 Ill. Dec. 448 (2009) (citing *Guillen*, 785 N.E.2d at 14)). The insurer has the right to rebut any showing of reasonableness. *Id.*

Cincinnati argues that Blue Cab's settlement of Sanders' claim was not reasonable because she did not have a colorable claim against Blue Cab.[14] Illinois courts have recognized that a principal or employer has a duty to exercise reasonable care in the selection of an independent contractor. *See Huber* v. *Seaton*, 542 N.E.2d 464, 505, 186 Ill. App. 3d 503, 134 Ill. Dec. 285 (1989) ("[A]n employer is generally insulated from liability for the negligent acts of an independent contractor . . . [but] a recognized exception to the general rule exists if the employer fails to exercise reasonable care in the selection of the independent contractor." (citations omitted)); *see also Gomien* v. *Wear-Ever Aluminum, Inc.*, 276 N.E.2d 336, 338, 50 Ill. 2d 19 (1971) (principal or employer may be liable for acts of independent contractor where it "failed to exercise reasonable care in selecting a careful and competent contractor"); *Strickland* v. *Commc'ns. & Cable of Chicago, Inc.*, 710 N.E.2d 55, 57, 304 Ill. App. 3d 679, 237 Ill. Dec. 632 (1999) ("A defendant may be liable for negligent hiring whether the person was retained as an employee or an independent contractor."). To show that an employer failed to exercise reasonable care in the selection of an independent contractor, a plaintiff must show that the employer hired an independent contractor that it "knew or should have known was unfit for the job so as to create a danger of harm to the plaintiff." *Jones* v. *Beker*, 632 N.E.2d 273, 277, 260 Ill. App. 3d 481, 198 Ill. Dec. 214 (1994). "In addition, there must be a connection between the particular unfitness and the independent contractor's negligent act." *Id.*; *see also Strickland*,

---

[14] Both parties refer to the underlying claim against Blue Cab as a "negligent approval" claim, but neither party cites (and the court could not locate) any cases that recognize a tort of "negligent approval" under Illinois law. The court thus analyzes the claim as one for negligent selection of an independent contractor.

12

710 N.E.2d at 58 (elements of negligent hiring are (1) "employer knew or should have known that the person hired had a 'particular' unfitness for the job that would create a foreseeable danger" and (2) "this particular unfitness was the proximate cause of the plaintiff's injury").

Thus, for a factfinder to determine that Blue Cab would be liable to Sanders for her injuries, it must find two elements: (1) that Blue Cab breached its duty in failing to investigate McFadden's health, and (2) that this breach proximately caused Sanders' injuries.

### A. Breach of Duty

Blue Cab is a common carrier. *See Demetrion* v. *Edwards*, 416 F.2d 958, 960 (7th Cir. 1969) (finding cab company was a common carrier because it dispatched cabs to calls, "held itself out as able and willing to carry all passengers within a reasonable radius," and made a "public profession out of the carriage of people"). As such, it owes its passengers the "duty to use the highest degree of care consistent with the mode of conveyance and practical operation thereof . . . ." *Przybylski* v. *Yellow Cab Co.*, 285 N.E.2d 506, 508, 6 Ill. App. 3d 243 (1972). Illinois courts have indicated that a common carrier owes a duty of the highest degree of care in hiring. *See Chi. Transit Auth.* v. *Amalgamated Transit Union, Local 241*, 926 N.E.2d 919, 928, 399 Ill. App. 3d 689, 339 Ill. Dec. 444 (2010) (noting status as common carrier would require CTA to use highest duty of care in selecting bus driver). It was reasonable for Blue Cab to anticipate that a court would find that its failure to investigate into McFadden's medical history at all would constitute a breach of its heightened duty to its passengers.

### B. Proximate Cause

Under Illinois law, proximate cause encompasses both cause in fact and legal cause. *Young* v. *Bryco Arms*, 821 N.E.2d 1078, 1085, 213 Ill. 2d 433, 290 Ill. Dec. 504 (2004) (citation omitted). Cause in fact is present "when there is a reasonable certainty that a defendant's acts

caused the injury or damage." *Id.* (quoting *Lee* v. *Chi. Transit Auth.*, 605 N.E.2d 493, 502, 152 Ill. 2d 432, 178 Ill. Dec. 699 (1992)). The operative question is whether the injury would have occurred absent the defendant's conduct. *See id.* Legal cause is established when "the defendant's conduct is 'so closely tied to the plaintiff's injury that he should be held legally responsible for it.'" *Id.* at 1086 (quoting *Simmons* v. *Garces*, 763 N.E.2d 720, 732, 198 Ill. 2d 541, 261 Ill. Dec. 471 (2002)). The question is whether a reasonable person would foresee that a breach of its duty would likely result in injury. *Id.* (citation omitted). With respect to a negligent selection or negligent hiring claim, there must be a connection between the specific unfitness for the job and the negligent act. *See Jones*, 632 N.E.2d at 277.

Although the factual support for a proximate cause finding against Blue Cab is weak, proximate cause "is ordinarily a question for the jury." *Gill* v. *Foster*, 626 N.E.2d 190, 197, 157 Ill. 2d 304, 193 Ill. Dec. 157 (1993) (citation omitted). "It can be decided as a matter of law on a motion for summary judgment only when the facts are undisputed and are such that there can be no difference in the judgment of reasonable persons as to the inferences to be drawn from them." *Id.* (citation omitted). At the time of settlement, Blue Cab faced trial in front of a jury against a sympathetic plaintiff with significant damages.[15] Although the facts are weak, they are enough to create a genuine issue of fact as to whether Blue Cab reasonably anticipated liability at the time of the settlement. For example, there is evidence that McFadden had been a heavy drinker with at least one seizure and that this information was part of his medical record. Blue Cab could have reasonably anticipated that a jury might conclude that this satisfied proximate cause.

---

[15] The court acknowledges that perhaps First Chicago should have provided Blue Cab with its own counsel, who could have moved to dismiss the complaint against Blue Cab. But instead Blue Cab was put in the difficult situation of choosing whether to defend or settle a lawsuit that had various unknowns and a sympathetic plaintiff who had been seriously injured through no fault of her own.

14

The court, however, is unconvinced that Blue Cab faced a high probability of a negative verdict, and settlement for the full amount of the Cincinnati Policy is thus suspect.

## CONCLUSION AND ORDER

Sanders' motion for summary judgment (dkt. 63) is denied. Because the court is persuaded that a genuine issue of material fact exists as to the reasonableness of the settlement, Sanders' motion to alter or amend the judgment (dkt. 83) is granted. The court's previous opinion and order (dkt. 76) and entry of judgment in favor of Cincinnati (dkt. 81) are hereby vacated. The court will schedule a trial on the reasonableness of the settlement. The parties are directed to appear for a scheduling conference on April 21, 2015 at 11:00 a.m.

Date: March 31, 2015

_____
U.S. District Judge Joan H. Lefkow